IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CONGREGATION ARIEL RUSSIAN       :
COMMUNITY SYNAGOGUE, INC.,
et al.,                          :

      Plaintiffs,              :

      v.                       :        Civil Action No. GLR-17-910

BALTIMORE COUNTY, et al.,        :

      Defendants.              :

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Baltimore County, Maryland (the "County") and the Board of Appeals of Baltimore County, Maryland's (the "Board")[1] Motion to Dismiss or for Summary Judgment (ECF No. 7) and Motion to Drop the Board of Appeals as a Defendant Under Counts V, VI, VII, VIII, and IX (the "Motion to Drop") (ECF No. 12). This suit arises out of the Board's denial of Plaintiffs Congregation ARIEL Russian Community Synagogue, Inc.'s ("ARIEL") proposed plan to build a synagogue and make a home for Plaintiff Rabbi Vevel Belinsky. The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant in part and deny in part the Motion to Dismiss and deny without prejudice the Motion to Drop.

---

[1] Both Defendants add "Maryland" to their names. Accordingly, the Court will direct the Clerk to amend the docket to reflect the Defendants' proper names.

# I.     BACKGROUND[2]

## A.     <u>Factual Background</u>

ARIEL wants to provide a synagogue for its congregation and residence for Rabbi Belinsky on their property in Pikesville, Maryland.  (Compl. ¶¶ 40, 88–89, ECF No. 1). In 2014, ARIEL purchased approximately three acres of property located at 8420 (Lot 3), 8430 (Lot 3A), and 8432 (Lot 3B) Stevenson Road, Pikesville (the "Property") as the location for its synagogue and home for Rabbi Belinsky.  (<u>Id.</u> ¶ 88).  A 2,000 square foot barn and 2,381 square foot two-story house are currently located on the Property. (<u>Id.</u> ¶¶ 92, 109).  ARIEL plans to raze the barn and construct a synagogue in its place. (<u>Id.</u> ¶¶ 110–13).  ARIEL would maintain the house as a parsonage for Rabbi Belinsky. (<u>Id.</u> ¶¶ 40, 111).

The Property is zoned D.R.1 (Density Residential 1) and R.C.5 (Rural Conservation/Rural Residential).[3]  (<u>Id.</u> ¶ 90).  Both D.R.1 and R.C.5 zoning districts authorize a place of worship as a permitted use.  (<u>Id.</u> ¶ 91).  The Property is, however, subject to various other zoning constraints set forth in the Baltimore County Zoning Regulations ("BCZR"), including Residential Transition Area use restrictions ("RTA Regulations") and Final Development Plan regulations ("FDP Regulations").  (<u>Id.</u> ¶¶ 145, 163, 181).  The FDP Regulations provide "another overlay of zoning regulations on top

---

[2] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations omitted).

[3] Plaintiffs use the designation zone "RC-5."  The BCZR, however, uses "R.C.5." Accordingly, the Court uses the BCZR's designation.

of the general use regulations and RTA [R]egulations."  (Id. ¶ 182).  The BCZR states that once a Final Development Plan ("FDP") has been approved, the lot cannot be used, nor can any construction take place, that is inconsistent with the FDP.  (Id. ¶ 184).  The BCZR sets forth procedures for amending an FDP.  (Id. ¶ 185).

The Property is governed by an FDP that was approved on February 16, 2006. (Id. ¶¶ 186, 205).  The FDP covered Lot 3, and because ARIEL wanted to consolidate Lots 3, 3A, and 3B, it filed a Petition for a Special Hearing with the Office of Administrative Hearings for Baltimore County, Maryland in April 2015.[4]  (Id. ¶¶ 205–06, 243).  ARIEL's Petition sought: (1) "permission to locate the synagogue within the D.R.1 zone"; (2) "a finding that the plan complied with the RTA [Regulations] for a 'new church'"; and (3) "confirmation that the existing home on the Property could remain as a parsonage."  (Id. ¶ 243).  On June 3, 2015, Kenneth and Jessamyn Abel, the owners of 8418 Stevenson Road, which is located next to the Property, also filed a Petition for a Special Hearing.  (Id. ¶¶ 97, 248).  The Abels sought a decision regarding whether ARIEL's Petition complied with the requirements for amending an FDP.  (Id.)  In June 2015, the Administrative Law Judge ("ALJ") presiding over ARIEL's and the Abels' Petitions consolidated the Petitions.  (Id. ¶ 249).

The ALJ, acting as Zoning Commissioner, held eight days of hearings on the Petitions between June 2015 and January 2016.  (Id. ¶ 251).  On January 12, 2016, the

_____

[4]    The previous owners of the Property, the Goldmans, were also parties to ARIEL's Petition.  (Compl. ¶¶ 187, 243).

ALJ issued his decision. (Id. ¶ 259). The ALJ concluded that ARIEL's proposed improvements "largely complied" with the RTA Regulations, but that they did not comply with the requirements for amending an FDP. (Id. ¶¶ 260–63, 265). Accordingly, the ALJ denied the FDP amendment. (See id. ¶ 265).

On January 14, 2016, ARIEL filed its appeal with the Board.[5] (Id. ¶ 268). The Board held ten separate hearings on ARIEL's appeal spanning from May 2016 to January 2017. (Id. ¶¶ 270–71). During the hearings, ARIEL informed the Board of "its obligations" to avoid violating the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in deciding ARIEL's Petition. (Id. ¶ 354). On January 4, 2017, the Board rendered its decision on the Petitions. (Id. ¶ 281). The Board concluded that ARIEL's proposed improvements did not comply with the RTA Regulations or the requirements for amending the FDP. (Id. ¶¶ 284, 304). The Board also addressed RLUIPA's nondiscrimination provisions, but "ignored its substantial burdens provisions." (Id. ¶¶ 354, 360–61). The Board's decision prevents the Plaintiffs from developing and using the Property as a synagogue. (Id. ¶¶ 284, 393, 399).

---

[5] The Board hears appeals from decisions of the Zoning Commissioner. Balt. Cty. Code § 32-3-401(a) (2015).

**B.    Relevant Procedural History**

On April 4, 2017, Plaintiffs filed their eight-count[6] Complaint, asserting the following Counts: (1) Violation of RLUIPA "Substantial Burdens," 42 U.S.C. § 2000cc(a) (2018) (Count I); (2) Violation of RLUIPA "Nondiscrimination," 42 U.S.C. § 2000cc(b)(2) (Count II); (3) Violation of RLUIPA "Equal Terms," 42 U.S.C. § 2000cc(b)(1), (Count III); (4) Violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 (2018) (Count V); (5) Violation of the Free Exercise Clause of the First Amendment to the United States Constitution (Count VI); (6) Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Count VII); (7) Violation of Due Process Clause of the Fourteenth Amendment to the United States Constitution (Count VIII); and (8) Violation of Article 36 of the Maryland Declaration of Rights (Count IX). (Id. ¶¶ 418–26). All federal constitutional violations are brought under 42 U.S.C. § 1983 (2018). (Id. ¶¶ 408–23). Plaintiffs seek declaratory and injunctive relief, as well as compensatory damages and attorney's fees. (Id. at 51–52).

On May 3, 2017, Defendants filed a Motion to Dismiss or for Summary Judgment (ECF No. 7). Plaintiffs filed an Opposition on May 17, 2017. (ECF No. 9). On May 31, 2017, Defendants filed a Reply. (ECF No. 10).

---

[6] Although the Complaint's Counts are numbered through IX, there is no "Count IV" in the Complaint. It is, therefore, an eight-count Complaint. (See Compl. ¶¶ 408–26). The Court retains the Complaint's numbering.

On June 1, 2017, Defendants filed a Motion to Drop the Board of Appeals as a Defendant Under Counts V, VI, VII, VIII, and IX. (ECF No. 12). On June 14, 2017, Plaintiffs filed their Opposition. (ECF No. 17). To date, the Court has not received a Reply.

## C.   The Board's Final Opinion and Order

On March 5, 2018, while the instant Motions were pending, the Board issued its 132-page written Opinion and Order. (Suppl., ECF No. 24). The Opinion and Order largely confirms the Board's January 4, 2017 decision. In its Opinion and Order, the Board denied ARIEL's Petition to construct a synagogue on the Property. (Id. at 120). It concluded that ARIEL's proposed improvements would violate RTA Regulations and that the proposed FDP amendment did not comply with FDP Regulations. (Id. at 71, 80–81, 93). The Board also determined that if converted to a parsonage for Rabbi Belinsky, the existing house would violate RTA Regulations. (Id. at 59–61). Finally, although the Board acknowledged that neither ARIEL's Petition nor the Abels' Petition raised RLUIPA, it nevertheless concluded that its decision did not violate RLUIPA's substantial burdens provisions. (Id. at 94–114). Finally, the Board concluded that the RTA and FDP Regulations do not violate the constitution. (Id. at 115–19).

## II.    DISCUSSION

### A.    Motion to Drop

Defendants move to drop the Board as a Defendant as to Counts V, VI, VII, VIII, and IX of the Complaint (the "non-RLUIPA Counts") under Federal Rule of Civil Procedure 21.  Defendants argue that the Board is not an independent legal entity subject to suit under the non-RLUIPA Counts.  The Court disagrees.

Rule 21 provides, in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party."  The decision to grant or deny a Rule 21 motion "lies in the discretion of the judge."  Hunt Valley Baptist Church, Inc. v. Balt. Cty. (HVBC), No. ELH-17-804, 2017 WL 4801542, at *12 (D.Md. Oct. 24, 2017) (quoting C. Wright & A. Miller, Federal Practice & Procedure (3d ed.) § 1688, at 505)).

In HVBC, a case decided while Defendants' Motion was pending, the same defendants[7]—the County and the Board—moved to drop the Board as a party to the federal constitutional counts, a state constitutional count, and judicial review count, but not the plaintiff's RLUIPA counts.[8]  Id. at *12, 1.  There, the County and the Board

---

[7] The same law firm, Storzer & Associates, P.C., represents Plaintiffs in this case and the plaintiff in HVBC.

[8] Plaintiffs submitted Judge Hollander's October 17, 2017 Memorandum Opinion as a Supplement to their Opposition to the Motion to Drop.  (ECF Nos. 18, 18-1). Defendants do not oppose the Court's consideration of this supplemental authority.  On October 24, 2017, Judge Hollander amended the October 17, 2017 Memorandum Opinion, but did not change the substance of her analysis or the original Order.  HVBC, 2017 WL 4801542 n.*.  Accordingly, the Court considered the October 24, 2017 Memorandum Opinion in deciding Defendants' Motion.

argued that the Board is not an independent legal entity subject to suit.  Id. at *12.  In support of their argument, they pointed to the language of § 103 of the Baltimore County Charter, which requires all lawsuits to be brought against the County.[9]  Id.

In HVBC, Judge Hollander discussed Prince George's Cty. v. Skillman, 2017 WL 2981871 (Md.Ct.Spec.App. July 13, 2017) (unpublished), in which the Court of Special Appeals of Maryland concluded that the Prince George's County Department of Planning, Inspection, and Enforcement ("DPIE"), was not an independent entity subject to suit based on the Prince George's Charter's language the creating the agency.  HVBC, 2017 WL 4801542, at *13 (citing Skillman, 2017 WL 2981871, *3–4).  The Court acknowledged that the language in the Prince George's County Charter contains similar language to § 103 of the Baltimore County Charter.[10]  Id.  The Court then noted, however, that "the Board and its counterparts in other jurisdictions have been sued."  Id. (collecting cases).  Finally, the Court cited the plaintiff's acknowledgement at oral arguments that "whether the Board remains a named defendant is seemingly of no significant consequence."  Id. at *13.  Ultimately, the Court denied the motion without

---

[9] Section 103 of the Baltimore County Charter provides, in relevant part: "The corporate name shall be 'Baltimore County, Maryland,' and it shall thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities and duties."

[10] Section 2013 of the Prince George's County Charter provides: "The corporate name shall be 'Prince George's County, Maryland,' and it shall thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities, and duties." Skillman, 2017 WL 2981871, at *3 (quoting Prince George's Cty. Charter § 103).

prejudice because a Maryland statute, § 10-305 of the Local Government Article, expressly authorizes the creation of the Board. Id. at *13.

In this case, Defendants move to drop the Board as to all non-RLUIPA Counts. Like HVBC, the non-RLUIPA Counts include alleged violations of the First Amendment's Free Exercise Clause, the Equal Protection Clause, the Due Process Clause, and Article 36 of the Maryland Declaration of Rights.[11] Compare id. at *1, 12, with (Compl. ¶¶ 418–26). Defendants here advance the exact same argument and cite to Baltimore County Charter § 103, as in HVBC. Compare HVBC, 2017 WL 4801542 at *12, with (Mem. Supp. Defs.' Mot. Drop at 1–3, ECF No. 12-1). The Court has not held oral arguments in the present case, but Plaintiffs note in their Opposition that the absence of the Board as a party would not prevent them from obtaining the relief sought. (Pls.' Mem. Opp'n Defs.' Mot. Drop at 5 n.2, ECF No. 17). Because this case is factually and legally analogous to HVBC and the Court agrees with HVBC's well-reasoned decision, the Court will deny Defendants' Motion to Drop without prejudice.

**B.**   **Motion to Dismiss or for Summary Judgment**

1.   **Conversion of Defendants' Motion**

In brief, the Court concludes that it will not covert Defendants' Motion into one for summary judgment.

---

[11] The non-RLUIPA Counts also include an alleged violation of the FHA (Count V).

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, supra, § 1366, at 159).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation

to notify parties of the obvious." <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) (quoting <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." <u>Hamilton v. Mayor of Balt.</u>, 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." <u>Ingle ex rel. Estate of Ingle v. Yelton</u>, 439 F.3d 191, 195 (4th Cir. 2006) (quoting <u>Strag v. Bd. of Trs., Craven Cmty. Coll.</u>, 55 F.3d 943, 954 (4th Cir. 1995)).

Here, Plaintiffs oppose conversion of Defendants' Motion to one for summary judgment because the parties have yet to engage in discovery. To support their position, Plaintiffs submitted a Rule 56(d) affidavit from Attorney Blair Lazarus Storzer (the "Storzer Declaration"). (Storzer Decl., ECF No. 23).[12] Defendants argue that the Storzer Declaration fails to comply with Rule 56(d)'s requirement that an affidavit set forth "specified reasons" as to why more discovery is needed. The Court disagrees with Defendants.

Storzer's Declaration lists multiple items for which Plaintiffs seek additional discovery with the sufficient specificity. For example, Storzer avers that Plaintiffs need discovery regarding, among other things: "The existence and regulation of religious land uses within Baltimore County's jurisdiction"; and "Plaintiffs' property in Baltimore County and the history of the use and development of the same." (Storzer Decl. ¶ 5). To be sure, some of the items listed in the Storzer Declaration may not be material to Plaintiffs' claims, but Plaintiffs are entitled to any discovery relevant to their claims. See Adams Hous., LLC v. City of Salisbury, 672 F.App'x 220, 223 (4th Cir. 2016)

_____

[12] Plaintiffs originally filed Storzer's Declaration with their Opposition. (See Storzer Decl., ECF. No. 9-3). Storzer's original declaration was not in compliance with 28 U.S.C. § 1746's requirement that it be signed and sworn. (Id.). Defendants raised this issue in their Reply, and urged the Court to convert its Motion into one for summary judgment. On June 1, 2017, Plaintiffs filed a Motion for Leave to File a Corrected Rule 56(d) Declaration Nunc Pro Tunc. (ECF No. 13). On January 26, 2018, the Court granted Plaintiffs' Motion for Leave to File a Corrected Rule 56(d) Declaration Nunc Pro Tunc. (ECF No. 22). On January 28, 2018, Plaintiffs filed a Corrected Rule 56(d) Affidavit from Storzer. (ECF No. 23). Accordingly, Storzer's Declaration is properly before the Court.

(explaining that a plaintiff must have an "adequate opportunity . . . to present its case" before the court can grant summary judgment).

Thus, the Court concludes that Plaintiffs' Rule 56(d) affidavit sufficiently establishes that discovery is necessary. Accordingly, the Court will construe the Motion as a Motion to Dismiss.

### 2. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am.,

N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 3. Analysis

Defendants advance three principal arguments[13] for why Plaintiffs' claims should be dismissed: (1) the Court should abstain from deciding this case; (2) Plaintiffs have not exhausted their administrative remedies; and (3) Rabbi Belinsky lacks standing.[14]

---

[13] In their Motion, Defendants also argued that: (1) Plaintiffs' claims were not ripe for adjudication because the Board had not issued its final, written decision; and (2) the Board has yet to decide the RLUIPA claims and should be allowed to do so without the Court's interference. Since Defendants filed their Motion, however, the Board issued its Final Opinion and Order. In the Opinion, the Board concluded that its decision did not violate RLUIPA's substantial burdens provision. Thus, the Board's written Opinion renders moot Defendants' arguments. Accordingly, the Court will not address them.

[14] In their Reply, Defendants assert that because the Board's minutes from the hearings, which Plaintiffs incorporate by reference into the Complaint, show that the

### i.  Abstention

Defendants request that the Court abstain from exercising jurisdiction over this case under Burford v. Sun Oil Co., 319 U.S. 315 (1943) and Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) and their respective progeny.

At bottom, the Court concludes that abstention is inappropriate under both doctrines.  The Court addresses each doctrine in turn.

### a.  **Burford** Abstention

Defendants argue that Burford abstention applies in this case because the BCZR is a complex regulatory scheme that encompasses matters of local concern and there is a "fair and expeditious process" for judicial review.   (Mem. Supp. Defs.' Mot. Dismiss ["Defs.' Mot."] at 21, ECF No. 7-1).  The Court disagrees.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." Skipper v. Hambleton Meadows Architectural Review Comm., 996 F.Supp. 478, 481

---

Board's rationale is supported by "substantial evidence," "none of Plaintiff[s'] claims of religious discrimination and constitutional violations under RLUIPA, § 1983, and the [FHA] are plausible in light of the Board's findings and should be dismissed."  (Defs.' Reply at 10).  The Court declines to address this argument for at least three reasons.

First, Defendants first raised this argument in their Reply, and therefore the Court need not consider it.  United States v. Freeman, No. PWG-16-197, 2016 WL 6582645, at *4 (D.Md. Nov. 7, 2016)  (quoting Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734 (D.Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.")).  Second, Defendants do not argue specific reasons why each of Plaintiffs' claims fail, or even address the elements of the claims.  Third, Defendants do not point to portions of the minutes that support their argument.  Accordingly, the Court declines to consider Defendants' argument.

(D.Md. 1998) (quoting <u>Colorado River</u>, 424 U.S. at 813)).  <u>Burford</u> abstention seeks "to prevent a federal court from interfering with a 'complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded.'" <u>Meredith v. Talbot Cty.</u>, 828 F.2d 228, 231 (4th Cir. 1987) (quoting <u>Browning-Ferris, Inc. v. Balt. Cty.</u>, 774 F.2d 77, 79 (4th Cir. 1985)).

### aa.　　RLUIPA and Federal Constitutional Claims

Here, <u>HVBC</u> addresses Defendants' <u>Burford</u> abstention argument related to Plaintiffs' RLUIPA and federal constitutional claims.  In <u>HVBC</u>, the plaintiff, a church, challenged the Board's denial of its application for a special exception under the BCZR to construct two buildings on its property, a church and a "fellowship hall."  2017 WL 4801542, at *8.  The church sued the Board and the County for violations of RLUIPA, the Free Exercise Clause of the First Amendment, the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and Article 36 of the Maryland Declaration of Rights.  <u>Id.</u> at *1.  The church also sought judicial review of the Board's decision.  <u>Id.</u>

In <u>HVBC</u>, the Court reached two holdings relevant to this case.  First, the Court concluded that abstention was inappropriate as to the church's RLUIPA claims because the United States Court of Appeals for the Fourth Circuit has declined to abstain in cases involving a "valid claim of religious prejudice."  <u>Id.</u> at *19 (quoting <u>Pomponio v.</u>

Fauquier Cty. Bd. of Supervisors, 21 F.3d 1319, 1328 (4th Cir. 1994)). Second, the Court declined to abstain from deciding the church's federal constitutional claims because the claims sought to "vindicate important constitutional rights" despite the connection to local zoning law. Id. at *20. The Court also highlighted the Supreme Court's holding in Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996), in which the Court held that Burford abstention does not apply to counts seeking monetary damages. Id. (citing Quackenbush, 517 U.S. at 730). As a result, the Court concluded that because the church "seeks damages as to all claims, other than [the judicial review count]," Burford abstention was inappropriate. Id.

Here, HVBC's two conclusions apply with similar force. Plaintiffs bring claims nearly identical to those the church in HVBC brought against the exact same parties. Plaintiffs bring six of the same counts: violations of RLUIPA's Substantial Burdens, Nondiscrimination, and Equal Terms provisions, as well as violations of the Free Exercise Clause of the First Amendment, the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment, and Article 36 of the Maryland Declaration of Rights.[15] Also similar to HVBC, Plaintiffs' claims are premised on the Board's denial under the BCZR of Plaintiffs' proposed plan to construct a place of worship on the Property. Further, Plaintiffs here, like the church in HVBC, seek

---

[15] There are only two differences between the counts in HVBC and the Counts in this case. First, HVBC involved a judicial review count; this case does not. Second, Plaintiffs in this case bring an FHA claim; the HVBC plaintiff did not.

monetary damages as to all counts. Thus, <u>Burford</u> abstention is inappropriate as to the RLUIPA and federal constitutional Counts for the reasons described in <u>HVBC</u> that are summarized above.

### bb.     FHA Claim

Plaintiffs point to <u>Bryant Woods Inn, Inc. v. Howard County</u>, 124 F.3d 597 (4th Cir. 1997), for the proposition that <u>Burford</u> abstention does not apply to the FHA. In <u>Bryant Woods</u>, the plaintiff owned and operated a group home for persons with Alzheimers disease and other forms of dementia. <u>Id.</u> at 599. The plaintiff filed an application with the defendant, Howard County, Maryland, for a variance to increase the number of persons permitted to reside in the group home. <u>Id.</u> The county denied its application. <u>Id.</u> The plaintiff then sued the county in federal court for violating the FHA. <u>Id.</u> at 601. The Fourth Circuit held that <u>Burford</u> abstention was inappropriate because the plaintiff did not "contest the interpretation of local law, but argue[d] that a federal antidiscrimination statute requires the county to make accommodation to its properly interpreted zoning ordinance." <u>Id.</u> at 602. As a result, the Court explained, it was "not in danger of misapplying local laws because of the impossibility of unraveling the skein of federal claims and the interpretation of local law." <u>Id.</u>

Likewise, Plaintiffs in this case do not ask the Court to interpret the BCZR. Rather, they allege that the Board discriminates against them on the basis of their religion. Because the Court is not tasked with interpreting the BCZR, there is no danger

18

of "misapplying local laws." Id.; see also Skipper, 996 F.Supp. at 485 (concluding that Burford abstention did not apply to a restrictive covenant because the Court was not asked to interpret it).

In sum, the Court concludes that Burford abstention is inappropriate as to Plaintiffs' RLUIPA, federal constitutional, and FHA Counts.

### b. Colorado River Abstention

Colorado River abstention permits the Court to stay or dismiss pending litigation "out of deference to . . . parallel litigation brought in state court." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 13 (1983). First, the Court must determine if the state and federal proceedings are, in fact, parallel. New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073 (4th Cir. 1991). If the proceedings are parallel, the Court must then consider whether "exceptional circumstances" exist under factors announced in Colorado River and Moses H. Cone. Id.

Defendants argue that the proceedings are parallel because "the parties are substantially the same" and the "issues involved in this lawsuit are the same issues presented" to the Board. The Court disagrees.

State and federal proceedings are parallel only "if substantially the same parties litigate the same issues in different forums." vonRosenberg v. Lawrence, 849 F.3d 163, 168 (4th Cir. 2017) (citing New Beckley, 946 F.2d at 1073). The requirement that the state and federal proceedings be parallel is "strictly construed," thus "requiring that the

parties involved be almost identical." Id. (quoting Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 464 (4th Cir. 2005)). In addition, state and federal claims "arising out of the same factual circumstances" are not parallel if "they differ in scope or involve different remedies." Id.; see, e.g., Chase Brexton, 411 F.3d at 464; New Beckley, 946 F.2d at 1074 (noting that "some factual overlap does not dictate that proceedings are parallel").

Here, the proceedings are not parallel for at least three reasons. First, the parties are not substantially similar because ARIEL was not litigating claims against the Board or the County during the administrative proceedings. Rather, ARIEL sought approval from the Board to build a synagogue and locate a home for Rabbi Belinsky on the Property. In addition, Rabbi Belinsky is a party to this action, but he was not a party to the Board proceedings. Abstention, therefore, would deprive him of his opportunity to litigate his claims. See Chase Brexton, 411 F.3d at 464. Second, nor are the same issues involved because the scope of Plaintiffs' claims here differ from the issues before the Board. Plaintiffs in the instant case bring claims against both the Board and the County for violating three different RLUIPA provisions, the FHA, and state and federal constitutional provisions. In the Board proceedings, by contrast, the Board only addressed whether the RTA and FDP Regulations violated RLUIPA's nondiscrimination provisions or the federal constitution. Plaintiffs' challenges, therefore, involve "additional and distinct issues." Chase Brexton, 411 F.3d at 464. Third, Plaintiffs seek

declaratory and injunctive relief, as well as compensatory damages—all forms of relief ARIEL did not seek before the Board.  See New Beckley, 946 F.2d at 1074.  Thus, the proceedings before the Board are not parallel to the proceedings in this Court.

In sum, the Court concludes that both Burford abstention and Colorado River abstention are inappropriate.  Accordingly, the Court will deny Defendants' Motion to the extent that it seeks dismissal of Plaintiffs' Complaint on these grounds.

### ii.    Exhaustion of Administrative Remedies

Defendants submit that Plaintiffs have not exhausted the available administrative remedies.[16] According to the Board, because it has "primary and exclusive jurisdiction over zoning appeals," ARIEL must follow the appeal procedures laid out in the Maryland Code before bringing the instant action.  (Defs.' Mot. at 24–25).  Plaintiffs counter that it is "black letter law" that exhaustion is not required for its constitutional claims under § 1983 or its statutory claims under RLUIPA and the FHA. (Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 30, ECF No. 9).  The Court agrees with Plaintiffs.

In HVBC, the Court noted that in Patsy v. Board of Regents of State of Florida, the Supreme Court held that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."  2017 WL 4801542, at *21 (quoting Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 516 (1982)).  HVBC

---

[16] Similar to their ripeness argument, Defendants also argue that because there is no final order from the Board, ARIEL has failed to exhaust its administrative remedies. This argument is moot because the Board has since issued its Opinion and Order.

further observed that exhaustion is not required before pursuing a RLUIPA claim, though "there must be some degree of finality before a RLUIPA claim is ripe for review." Id. This does not require, however, that parties seek judicial review in state court before bringing RLUIPA claims. Id. (citing 42 U.S.C. §§ 2000CC et seq.); see Murphy v. Zoning Comm'n of New Milford, 223 F.Supp.2d 377, 382 n.3 (D.Conn. 2002) ("The Supreme Court's reasoning in Patsy v. Board of Regents, as to why exhaustion is not a prerequisite to a § 1983 claim, is equally applicable to claims under RLUIPA." (internal citations omitted)). Accordingly, Judge Hollander concluded that the church did not have to exhaust administrative remedies before pursuing its § 1983 or RLUIPA claims. HVBC, 2017 WL 4801542, at *21.

In this case, like in HVBC, Plaintiffs bring § 1983 and RLUIPA claims, and, similarly, the Board denied ARIEL's request for a special exception and FDP amendment. ARIEL could appeal to the Circuit Court for Baltimore County, Maryland, but it has not.[17] See Md. Code Ann., Cts. & Jud. Proc. §§ 12-308, 12-201 (West 2018). This does not change the Court's conclusion, however, that Plaintiffs do not have to exhaust administrative remedies before bringing their § 1983 or RLUIPA claims.

---

[17] The Court notes that ARIEL has 30 days from the date of the Board's March 5, 2018 Opinion and Order to file a petition for judicial review. See Md. Rule 7-210. To date, the Court has no record of ARIEL doing so.

As to the FHA claim, the Fourth Circuit held in <u>Bryant Woods</u> that the FHA does not require the exhaustion of state administrative remedies. 124 F.3d at 601. Plaintiffs, therefore, need not exhaust administrative remedies before bringing their FHA claim.

In sum, the Court concludes that Plaintiffs do not need to exhaust administrative remedies before bringing their federal constitutional, RLUIPA, or FHA claims.

### iii.    Rabbi Belinsky's Standing

Defendants contend that Rabbi Belinsky does not have standing for two reasons. First, Defendants assert that because Rabbi Belinsky was not a party to any of the zoning proceedings, he lacks standing to bring any of the claims set forth in the Complaint. Second, Defendants assert that Rabbi Belinsky lacks standing to bring the RLUIPA claims because he does not have a property interest in the Property.

### a.    Party to the Board Proceedings

Here, Defendants conflate standing to bring an action for judicial review with Article III standing. It is true that under Maryland's Administrative Procedure Act ("APA"), "to be entitled to judicial review of a final agency decision a person must be a party to agency proceedings and be aggrieved by that final decision." <u>Cty. Council of Prince George's Cty. v. Chaney Enters. Ltd. P'ship</u>, 165 A.3d 379, 391 (Md. 2017) (citing Md. Code Ann., State Gov't § 10-222(a)(1) (1957, 2014 Repl. Vol.); then citing <u>Cty. Council of Prince George's Cty. v. Billings</u>, 21 A.3d 1065, 1072 n.10 (2011)), <u>reconsideration denied</u> (Aug. 24, 2017). But, Plaintiffs do not seek judicial review of the

Board's decision. Rather, they allege that the BCZR and the Board's actions violate federal and state constitutional law and federal statutory law. Rabbi Belinsky's standing in this case, therefore, does not hinge on whether he was a party to the Board proceedings.

### b.  Standing under RLUIPA

Statutory standing requires the Court to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1387 (2014). Here, Defendants challenge Rabbi Belinsky's standing under RLUIPA. Accordingly, the Court assesses Rabbi Belinsky's statutory standing.

RLUIPA's substantial burdens, equal terms, and nondiscrimination provisions apply only to "land use regulations." 42 U.S.C. §§ 2000cc(a)(1), (b)(1), (b)(2) (2018). RLUIPA defines "land use regulation" as:

> [A] zoning or landmarking law, or the application of such law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.

42 U.S.C. § 2000cc-5(5). Consequently, to state a claim under RLUIPA's substantial burdens, equal terms, and nondiscrimination provisions, Rabbi Belinsky must have "an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." Id.

Both Plaintiffs and Defendants point to a case from the United States District Court for the District of Connecticut, <u>Chabad Lubavitch of Litchfield County, Inc. v. Borough of Litchfield</u>, No. 3:09-CV-1419, 2016 WL 370696 (D.Conn. Jan. 27, 2016), to support the proposition that Rabbi Belinsky either has standing under RLUIPA or, in Defendants' case, lacks standing under RLUIPA.

In <u>Chabad Lubavitch</u>, a synagogue and its rabbi sued a local government, its historic preservation council, and several individual members of the council, alleging that they violated RLUIPA in denying their "Certificate of Appropriateness in order to gain permission to modify the property to accommodate its religious needs." <u>Id.</u> at *2. The defendants moved to dismiss the rabbi as a plaintiff for lack of standing under RLUIPA. <u>Id.</u> at *1.

In analyzing the motion, the Court made four observations and conclusions dispositive in this case. First, the Court noted that under Connecticut law, "a non-owner can acquire a property interest by entering into an oral agreement with the owner to lease the property." <u>Id.</u> at *26. Second, the Court reasoned that "an oral agreement to lease, purchase, or occupy property" would satisfy the property interest requirement because the provision applies to "anyone with a contract to acquire a property interest." <u>Id.</u> Third, the Court concluded that the complaint, which stated that the property would include "accessory rabbinical housing dedicated solely to its full-time rabbi's use," sufficiently alleged that the rabbi had a contract to acquire a property interest in the property. <u>Id.</u>

Finally, although the Court concluded that the rabbi had a property interest in the proposed building, the Court nevertheless dismissed the rabbi's nondiscrimination claim because that provision only confers standing on "any assembly or institution," not individuals. Id. at *27 (quoting 42 U.S.C. § 2000cc(b)(2)).

Plaintiffs argue that Maryland recognizes oral lease agreements, and the Court, like the Chabad Lubavitch Court, can infer that there is an oral lease agreement between ARIEL and Rabbi Belinsky. As a result, Plaintiffs maintain that Rabbi Belinsky has a property interest in the Property. The Court agrees.

In Maryland, a non-owner can acquire a property interest by entering into an oral agreement with the owner to lease the property. See Cty. Council for Montgomery Cty. v. Inv'rs Funding Corp., 312 A.2d 225, 237 (Md. 1973). Similar to the Chabad Lubavitch complaint, the Complaint in the instant case states that the existing house on the Property "will be used as a home for Rabbi Belinsky." (Compl. ¶ 111). Based on this factual allegation, the Court reasonably infers that Rabbi Belinsky and ARIEL entered into an oral agreement allowing Rabbi Belinsky exclusive use of the existing house. See Chabad Lubavitch, 2016 WL 370696, at *26. The Court, therefore, concludes that the Complaint plausibly alleges that Rabbi Belinsky had a contract to acquire a property interest in the Property. Id.

Nevertheless, the Court concludes that Rabbi Belinsky lacks standing to bring the nondiscrimination and equal terms claims. As the Chabad Lubavitch court observed,

RLUIPA's nondiscrimination provision applies only to "any assembly or institution." See id. (quoting 42 U.S.C. § 2000cc(b)(2)). Similarly, RLUIPA's equal terms provision applies only to "a religious assembly or institution." 42 U.S.C. § 2000cc(b)(1). Because Rabbi Belinsky is an individual, and not an "assembly or institution," the Court will dismiss his nondiscrimination and equal terms claims.

Accordingly, the Court will grant Defendants' Motion as to the nondiscrimination and equal terms claims and deny the Motion as to the substantial burdens claim.

### iv.    Article 36 of the Maryland Declaration of Rights

Neither Plaintiffs nor Defendants advance specific arguments for retaining jurisdiction over or dismissing Count IX, violation of Article 36 of the Maryland Declaration of Rights. It is an open question whether Article 36 provides a private cause of action. HVBC, 2017 WL 4801542, at *39 (quoting Booth v. Maryland, 337 F.App'x 301, 311 (4th Cir. 2009)). Because the Court will not dismiss Plaintiffs' federal constitutional claim under the First Amendment's Free Exercise Clause, the Court will retain jurisdiction over the Maryland constitutional claim at this stage in the litigation. Wood v. Bd. of Educ. of Charles Cty., No. GJH-16-00239, 2016 WL 8669913, at *11 (D.Md. Sept. 30, 2016) (retaining jurisdiction over an Article 36 claim because the Court was "allowing parallel federal claims to survive"); see HVBC, 2017 WL 4801542, at *40 (exercising supplemental jurisdiction over the plaintiff's Article 36 claim because it is

"effectively the same as its First Amendment claim" and consideration of the claim "will not require additional discovery").

### III.    CONCLUSION

For the foregoing reasons, the Court will deny without prejudice Defendants' Motion to Drop the Board of Appeals as a Defendant Under Counts V, VI, VII, VIII, and IX (ECF No. 12).  The Court will grant in part and deny in part Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 7).  A separate Order follows.

Entered this 28th day of March, 2018

/s/

_____
George L. Russell, III
United States District Judge