## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**CHAMBERS OF**
**STEPHANIE A. GALLAGHER**
**UNITED STATES DISTRICT JUDGE**
MDD_SAGchambers@mdd.uscourts.gov

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**

May 3, 2021

LETTER ORDER

RE:   Congregation ARIEL Russian Community Synagogue, Inc. v. Board of Appeals
      Civil Case No. SAG-17-00910

Dear Counsel:

This case arises out of a land use dispute between a religious community, Congregation ARIEL Russian Community Synagogue, Inc. ("Congregation Ariel") and its leader, Rabbi Belinsky (collectively "Plaintiffs"), and Baltimore County and the Baltimore County Board of Appeals (collectively "Defendants"). Several of the parties' discovery disputes have been adjudicated by United States Magistrate Judge A. David Copperthite. Regarding one such dispute, Judge Copperthite issued a written ruling on January 28, 2021 and further clarified his decision in a subsequent order on February 5, 2021, requiring Plaintiffs to disclose various communications between Rabbi Belinsky and the professionals who assisted him in the underlying administrative proceedings with Baltimore County. ECF 202; ECF 208. Judge Copperthite found that Plaintiffs had waived any privilege attached to these communications. In accordance with Federal Rule of Civil Procedure 72(a), Plaintiffs filed objections to Judge Copperthite's ruling, ECF 209, and Defendants filed an opposition to Plaintiffs' objection, ECF 212. The Court has considered these filings, counsels' arguments at the telephonic hearing, and the supplemental briefings submitted by both parties, ECF 216 and 217. For the reasons explained below, this Court will vacate and modify Judge Copperthite's Order as follows: Plaintiffs will be required to disclose communications that are (1) between Rabbi Belinsky and Timothy Kotroco or between Rabbi Belinsky and David Thaler, including those with other individuals courtesy copied, (2) prior to the October, 2016 closing date, and (3) relevant to Plaintiffs' reasonable expectations. Plaintiffs will not be required to disclose communications between Rabbi Belinsky and Herbert Burgunder, unless they also meet the above conditions.

Preliminarily, Plaintiffs argue that the requested communications are not relevant for two reasons: (1) because Plaintiffs' reasonable expectations should be judged based on the time they contracted to purchase the property, not the closing date; and (2) because Plaintiffs' claim turns on objectively reasonable expectations, not Rabbi Belinsky's subjective expectations. ECF 209 at 4-8, 11-12; ECF 217 at 4 n.1. For the reasons explained at the telephonic hearing, this Court maintains that communications which helped form Rabbi Belinsky's subjective expectations that the County would approve his zoning permitting requests prior to and until he closed on the property in October, 2016 are relevant to Plaintiffs' substantial burden claim. Under the circumstances of this case, the "purchase" of the property did not occur until closing. Having found the withheld communications are relevant, the Court turns to Plaintiffs' assertion that they

Congregation ARIEL Russian Community Synagogue, Inc. v. Board of Appeals
Civil Case No. SAG-17-00910
May 3, 2021
Page 2

are otherwise not discoverable because they are privileged.

The withheld documents consist of communications between Rabbi Belinsky and four professionals: Herbert Burgunder ("Burgunder"), Plaintiffs' counsel during the administrative proceedings; Timothy Kotroco ("Kotroco"), an attorney who testified as an expert witness during the administrative proceedings; David Thaler ("Thaler"), an engineer who testified as an expert witness during the administrative proceedings; and Stacey MacArthur ("MacArthur"), an engineer who works with Thaler.  The withheld documents can be grouped into four relevant categories:

- The largest number of withheld documents are communications between Rabbi Belinsky and Burgunder.  There is no dispute that Rabbi Belinsky and Burgunder had an attorney-client relationship and these communications were protected by the attorney-client privilege.

- The second-largest category of withheld documents are communications between Rabbi Belinsky and Kotroco, Thaler, and/or MacArthur, where Burgunder was also courtesy copied on the message.  Although Defendants appear to argue that not all of these documents are privileged, after an *in camera* review, Judge Copperthite deemed these communications privileged.  This Court will not reevaluate that ruling.  *See* ECF 124.

- Third, a small number of withheld communications are those between Rabbi Belinsky and Kotroco.  Plaintiffs assert that they are not related to Rabbi Belinsky's "reasonable expectations" or are protected by the attorney-client and work product privileges.  ECF 217 at 1–2.

- Fourth, a number of communications have also been withheld between Rabbi Belinsky and Thaler and MacArthur.  Plaintiffs assert that these communications are protected by the work product privilege.  *See* ECF 216-1.

Although these communications may be relevant to Plaintiffs' claim, not all relevant evidence is discoverable.  The attorney-client privilege and work product privilege shields certain relevant communications from the opposing party.  *See, e.g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011); *Hickman v. Taylor*, 329 U.S. 495, 509–14 (1947).  These privileges, of course, are not absolute, and may be waived by the person asserting the privilege.  *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018).  If a party discloses "a communication or information covered by the attorney-client privilege or work-product protection," he waives any privilege to that communication and to "undisclosed communications or information concern[ing] the same subject matter" that "ought in fairness" also be considered.  *Id.* (interpreting Fed. R. Evid. 502(a)).

Additionally, in some circumstances, waiver may occur "where no disclosure has been made." Fed. R. Evid. 502 advisory committee's note to 2011 Amendments (citing *Nguyen v. Excel*

Congregation ARIEL Russian Community Synagogue, Inc. v. Board of Appeals
Civil Case No. SAG-17-00910
May 3, 2021
Page 3

*Corp.*, 197 F.3d 200 (5th Cir. 1999) and explaining changes to Rule 502 are "not intended to displace or modify" other common-law waiver doctrines). When a party "injects into the case an issue that in fairness requires an examination of otherwise protected communications" the privilege is waived. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1418–19 (11th Cir. 1994). This is because "[t]he law prohibits a party from using information as a sword to prove its case while shielding the information from disclosure" by asserting a privilege. *Carroll Co. v. Sherwin-Williams Co.*, No. WMN-11-1700, 2012 WL 4846167, at *2 (D. Md. Oct. 10, 2012); *see also Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (holding plaintiff waived attorney-client and work product privilege as to any information given to plaintiff by his attorneys where plaintiff's knowledge was at issue and he asserted his knowledge was based on communications with his attorney); *United States v. White*, 944 F. Supp. 2d 454, 459–60 (S.D.S.C. 2013) (holding party implicitly waived the attorney-client privilege by blaming his attorney for not understanding a material fact that would impact his standing and other relevant issues); *cf. United States v. Mierzwicki*, 500 F. Supp. 1331, 1335 (D. Md. 1980) ("It is well established that when confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege."). This doctrine acknowledges and guards against the possibility that "[s]elective use of privileged information by one side" could "'garble' the truth." *Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C. 1994) (holding plaintiffs waived privilege protecting previous negotiations by asserting the present circumstances were unforeseeable during those negotiations).

Defendants contend that Plaintiffs have waived any privilege to all of the communications described above by asserting that they relied on communications with Burgunder, Kotroco, Thaler, and MacArthur to form their expectations about whether their permits would be approved by the county. Specifically, Defendants base this argument on testimony from Rabbi Belinsky's and Thaler's depositions. The Court addresses Rabbi Belinsky's communications with each of the individuals in turn.

<u>Rabbi Belinsky's Communications with Burgunder</u>

During Rabbi Belinsky's deposition, Plaintiffs' counsel repeatedly advised him not to answer questions that could potentially reveal privileged attorney-client communications he had with Burgunder. *See, e.g.*, ECF 212-12 at 371:4–10, 372:6–10, 373:17–19. Rabbi Belinsky testified that he relied on communications with Burgunder to form his expectations before purchasing the property, but he did not reveal the contents of such communications. *Id.* at 371:11–373:2, 460:14–421:18. Additionally, at Rabbi Belinsky's deposition, Plaintiffs' counsel represented that Plaintiffs would not rely on any communications, oral or written, between Rabbi Belinsky and Burgunder to establish Plaintiffs' reasonable expectations. *Id.* at 387:19–388:10. This Court therefore finds no basis for waiver of the attorney-client privilege for communications between Rabbi Belinsky and Burgunder. Plaintiffs neither selectively revealed privileged communications nor placed the communications at issue. Although Rabbi Belinsky admitted at deposition in response to defense counsel's questions that his expectations about the property were formed in part by Burgunder's advice, Plaintiffs do not intend to rely on Burgunder's

Congregation ARIEL Russian Community Synagogue, Inc. v. Board of Appeals
Civil Case No. SAG-17-00910
May 3, 2021
Page 4

representations or omissions to prove their claim.  There is no unfairness to Defendants because Plaintiffs have not and do not intend to use communications between Rabbi Belinsky and Burgunder to "obtain a tactical advantage" or "unfairly influence a decisionmaker."  *Cf. McCullough v. Hanley*, No. 17 CV 50116, 2019 WL 3776962, at * (N.D. Ill. Aug. 12, 2019) (declining to apply subject matter waiver to privileged communications where plaintiff made a partial disclosure at deposition but had not and would not otherwise place such testimony before the court because there was no harm or unfairness to defendants).

Defendants argue that because Plaintiffs intend to rely on the advice of other professionals to demonstrate their reasonable expectations and because Rabbi Belinsky has admitted he also relied on Burgunder's advice, Plaintiffs should be required to disclose Rabbi Belinsky's communications with Burgunder.  Defendants maintain that to hold otherwise would result in fundamental unfairness, because Plaintiffs could present advice from individuals that would be favorable to their position, while withholding another's advice that was more problematic to their claim.  The Court is not persuaded that under these circumstances such a sweeping implicit waiver is appropriate.  Such a broadly defined waiver would essentially eliminate the attorney-client privilege for any plaintiff bringing a RLUIPA substantial burden claim, because advice received from one's attorney would nearly always play into one's expectation.  Although the nature of a substantial burden claim makes a claimant's subjective expectations relevant, it does not follow that he has automatically placed everything known to him "at issue" simply by filing suit.  In this case, Plaintiff will not present evidence about Burgunder's opinions or advice to show that Rabbi Belinsky's expectation that he could build a synagogue on the property was reasonable.  Therefore, Defendants do not need to be able to refute such claims, and shielding these protected communications does not create a manifestly unfair situation that would prevent them from preparing a defense.  Therefore, the Court will modify Judge Copperthite's order to the extent that it requires Plaintiffs to disclose all communications between Rabbi Belinsky and Burgunder.

<u>Rabbi Belinsky's Communications with Kotroco</u>

Rabbi Belinsky also testified that he relied on communications with Kotroco to form his expectations.  ECF 212-12 at 370:12–373:2, 460:14–421:18.  Unlike his communications with Burgunder, Rabbi Belinsky was permitted to testify about the content of certain advice he received from Kotroco.  *Id.* at 377, 462:11–463:15.

MR. FELDMAN:  What did Mr. Kotroco tell you about your chances of success on the FDP issue?

MR. STORZER:  You can answer.

RABBI BELINSKY:  He believed that we – he very strongly believed that we should not be subject to the FDP amendment.  And he also believed that even if we have to go through this

Congregation ARIEL Russian Community Synagogue, Inc. v. Board of Appeals
Civil Case No. SAG-17-00910
May 3, 2021
Page 5

> process, we are consistent with spirit and intent.

> MR. FELDMAN:  And was Mr. Kotroco's belief based on the argument that
>                        the small lot table applied?

> RABBI BELINSKY:  Yes.

*Id.*  Additionally, unlike the Burgunder communications, Plaintiffs' counsel have affirmatively stated that Plaintiffs will rely on communications between Kotroco and Rabbi Belinsky to prove their case.

> MR. FELDMAN:  At trial will plaintiffs be relying on anything communicated
>                        by Mr. Kotroco to Ariel or the Rabbi on the issue of the
>                        Rabbi and Ariel's expectations before purchasing the
>                        property?

> MR. STORZER:  Yes.

*Id.* at 388:11–15.  Plaintiffs have claimed an attorney-client relationship formed between Rabbi Belinsky and Kotroco at some point prior to closing on the property.  Although it is unclear whether the communications disclosed by Belinsky at his deposition were those Plaintiffs consider privileged or unprivileged based on whether or not Kotroco had assumed his role as counsel, this determination is not dispositive.  Regardless of whether Plaintiffs disclosed privileged communications during the time Kotroco served as counsel, they have put such communications at issue by using what Rabbi Belinsky was told by Kotroco to establish his expectations about the property.  It would be unfair to Defendants to allow Plaintiffs to strategically select certain statements from Kotroco without revealing other communications which could potentially contradict or temper his original advice.  Therefore, the Court finds Plaintiffs have implicitly waived any attorney-client and work product privileges for communications between Rabbi Belinsky and Kotroco concerning the property prior to the closing date, including communications where Burgunder is also copied on the email.

### Rabbi Belinsky's Communications with Thaler and MacArthur

Similarly, Rabbi Belinsky also testified at his deposition that he relied on advice and information from Thaler and MacArthur to form his expectations about the property.  ECF 212-12 at 204:3–205:15, 370:12–371:21, 457:2–11, 460:14–461:4.  Plaintiffs also allowed Thaler to be deposed.  At his deposition, Thaler testified about some of the advice he gave Rabbi Belinsky.  Specifically, he stated, "I'm sure I told him, you know, don't close until – I probably told him,

Congregation ARIEL Russian Community Synagogue, Inc. v. Board of Appeals
Civil Case No. SAG-17-00910
May 3, 2021
Page 6

don't close until you get permits."[1]  ECF 216-3 at 289:7–19.  Thaler also testified that he told Rabbi Belinsky that it was "highly probable" they would get approved based on their filing with the Board of Appeals regarding at least one issue.  *Id.* at 292:16–293:1.  As with Kotroco, Plaintiffs' counsel represented that Plaintiffs would present evidence regarding Thaler's advice and Plaintiffs' reliance on his advice to prove their case.  ECF 212-12 at 392:8–11.  Therefore, the Court reaches the same conclusion as it has regarding communications with Kotroco.  Notwithstanding Plaintiffs' assertion that no privileged communications between Rabbi Belinsky and Thaler were disclosed, Plaintiffs have put Thaler's advice at issue by relying on his communications to establish, in part, Rabbi Belinsky's expectations before closing on the property.  The Court therefore finds Plaintiffs have implicitly waived any attorney-client and work product privileges for communications between Rabbi Belinsky and Thaler concerning the property prior to the closing, including communications where Burgunder is also copied on the email.[2]

Despite the informal nature of this letter, it should be flagged as an opinion and order.  The parties are ordered to confer on a joint proposed schedule for further proceedings in this case, and to provide the proposal to the Court on or before May 13, 2021.  While this Court understands that Defendants did not consent to Plaintiffs' proposed bifurcation of the summary judgment briefing to address the prior restraint claim initially before the remaining claims, this Court agrees with Plaintiffs that such bifurcation would serve the best interests of this case.  The parties should therefore incorporate bifurcated briefing into their proposed schedule.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge

---

[1] An email exchange between Rabbi Belinsky and Thaler disclosed by Plaintiffs echoes this advice.  *See* ECF 216-5 ("As there is always risk of not being successful, I think it prudent to put off the purchase if you can, at least until there is an approved Development Plan (permits is even better but takes longer).")

[2] At the telephonic hearing, the parties represented that there are no disputed communications between only MacArthur and Rabbi Belinsky, but some communications between Thaler and Rabbi Belinsky also include MacArthur.  The Court's ruling requires Plaintiffs to disclose all relevant communications between Rabbi Belinsky and Thaler, including those which include MacArthur.